UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JONATHAN GREEN<br>       Plaintiff,<br><br>v.<br><br>TIMOTHY McCARTHY, the CITY OF BOSTON, the COMMISSIONER OF THE BOSTON POLICE DEPARTMENT EDWARD DAVIS,<br>       Defendants. | 1:09-11705-NG |

### DEFENDANT TIMOTHY McCARTHY'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

#### INTRODUCTION

Pursuant to Fed. R. Civ. P. 56, Defendant Timothy McCarthy ("Officer McCarthy") respectfully moves this Honorable Court to grant summary judgment in his favor on all claims asserted against him by Plaintiff, Jonathan Green ("Plaintiff"). As grounds for this Motion, Officer McCarthy states that Plaintiff has failed to establish a genuine dispute of material fact that Officer McCarthy used excessive force in violation of his civil rights under 42 U.S.C. § 1983, violated M.G.L. c. 12, § 11(I), the Massachusetts Civil Rights Act and committed civil assault and battery and intentional infliction of emotional distress.

#### FACTUAL BACKGROUND

On May 7, 2007, Officer McCarthy and Plaintiff were both inside of the 7-11 store located at 252 West Newton Street in Boston. See Statement of Facts, at ¶ 6

1

(hereinafter (*SOF*, at ¶ __)). At the same time, a group of three teenage boys was also in the 7-11. Id. An employee of the 7-11, Ms. Yafeng Pan, was concerned that the teenagers were shoplifting candy from the store. (*SOF*, at ¶ 7). To keep a better eye on the teenagers, Ms. Pan walked over to the candy aisle and pretended to be stocking the shelves. Id.

Ms. Pan and another employee of the 7-11, Mr. Chuang Pan, first noticed Plaintiff when he was reading a newspaper that he picked up from one of the shelves. (*SOF*, at ¶ 8). Ms. Pan and Mr. Pan both found Plaintiff to be loud and disruptive from the very first moment they encountered him in the store. (*SOF*, at ¶ 9). Ms. Pan heard Mr. Green yell, "Why are you looking at me? Is it because I am black?" Id. Mr. Pan also heard Plaintiff shout, "Why are you looking at me?," "Fucking Chinese!" and "You Chinese opened the store here. Why don't you go back to China to open the store." Id. Plaintiff's extremely disruptive yelling and explosive behavior frightened Ms. Pan and caused other customers in the store to begin to stare. (*SOF*, at ¶ 10).

According to Plaintiff, he was simply watching the teenagers as they went about the store and he took issue when he saw one of the employees monitoring and following the boys around the store. (*SOF*, at ¶ 11). Plaintiff claims that when the teenagers eventually approached the counter to purchase items, he asked the teenagers why they wanted to purchase items from a store where employees follow patrons around the store. Id.

Officer McCarthy, who was standing near the Plaintiff, saw that Plaintiff was creating a scene in the store and yelling at Ms. Pan and Mr. Pan about following the teenagers around the store. (*SOF*, at ¶ 13). In an attempt to reduce rising tensions, Officer

McCarthy calmly asked Plaintiff to lower his voice and to pay for his items. (*SOF*, at ¶ 14). Plaintiff responded to Officer McCarthy that his conversation was none of Officer McCarthy's business. Id. The escalating situation with Plaintiff caused Officer McCarthy to open his red sox jersey that he was wearing over his uniform and identify himself as a police officer. (*SOF*, at ¶ 15). Officer McCarthy then asked Plaintiff whether he intended on buying any items at the store and, if not, then he should leave. (*SOF*, at ¶ 16). While Plaintiff claims that he responded to Officer McCarthy's command by saying that he had no problem leaving the store, Officer McCarthy observed him reluctantly leave the store and continue to yell as he walked out (*SOF*, at ¶ 17).

When Plaintiff came out of the store, he stepped onto the street, just off of the side-walk in front of the store, to make a call from his cell phone to "check" his voicemail. (*SOF*, at ¶ 18). In Plaintiff's first deposition, he claimed that he called his landline at home to check his messages. (*SOF*, at ¶ 19). Then at Plaintiff's second deposition he said that he was checking the voicemail on his cell phone. (*SOF*, at ¶ 20). Interestingly, Defendants' records show that Plaintiff didn't make a phone call from his cell phone at all at the time of the encounter with Officer McCarthy. (*SOF*, at ¶ 21).

While Plaintiff remained outside of the store "checking his messages", Officer McCarthy exited the store. (*SOF*, at ¶ 22). Plaintiff felt it was necessary to initiate further communication with Officer McCarthy and asked Officer McCarthy for his name and badge number. Id. Officer McCarthy obliged and gave Plaintiff his information. (*SOF*, at ¶ 23). Admittedly, Plaintiff wanted Officer McCarthy's information because he was disgruntled after what transpired in the store and considered the possibility of filing a complaint against Officer McCarthy. (*SOF*, at ¶ 24).

After he obtained Officer McCarthy's information, Plaintiff stepped onto the sidewalk and bent down toward the ground to organize his personal belongings, which included his cell phone, keys and a glass drink bottle. (*SOF*, at ¶ 25). Officer McCarthy took several steps toward him, without raising his voice, asked Plaintiff to walk away from the area. (*SOF*, at ¶ 26). In response to Officer McCarthy's command, Plaintiff assumed a defensive position. (*SOF*, at ¶ 27). Plaintiff explained to Officer McCarthy that he lived down the street on St. Botolph Street. (*SOF*, at ¶ 28). Plaintiff then turned to cross the street when Officer McCarthy grabbed Plaintiff's shirt near his right, lower back. (*SOF*, at ¶ 29). Plaintiff continued to attempt to walk away from Officer McCarthy when Officer McCarthy grabbed Plaintiff's right arm near his wrist. (*SOF*, at ¶ 30). Officer McCarthy then told Plaintiff that he did not give Plaintiff permission to leave and asked Plaintiff to provide identification. (*SOF*, at ¶ 31). At this point, the exchange between Plaintiff and Officer McCarthy attracted the attention of people in the area who were watching the events unfold. (*SOF*, at ¶ 32). Plaintiff refused to provide a form of identification to Officer McCarthy who then said he was placing Plaintiff under arrest. (*SOF*, at ¶ 33).

Officer McCarthy was unable to bring Plaintiff's arm behind his back to place handcuffs on him because Plaintiff started turning in circles to prevent Officer McCarthy from completing the arrest. (*SOF*, at ¶ 34). Making the situation more dangerous, Plaintiff's circling pulled Officer McCarthy out into the street and into oncoming traffic. (*SOF*, at ¶ 35).

A Boston police cruiser ("cruiser") approached as Officer McCarthy continued to struggle with Plaintiff to control his arms and place him in handcuffs. (*SOF*, at ¶ 36). The

cruiser pulled over and a male and female officer exited the vehicle. (*SOF*, at ¶ 37). The two arriving officers immediately assisted Officer McCarthy in the struggle with Plaintiff. (*SOF*, at ¶ 38). Plaintiff was so difficult to control that it took all three officers to move the Plaintiff toward the cruiser where he was placed against the vehicle with his chest against the driver's side, back-door. (*SOF*, at ¶ 39). Even with Plaintiff against the cruiser, the officers continued to struggle with the Plaintiff to get his arms behind his back. (*SOF*, at ¶ 40). As the officers held the Plaintiff against the cruiser, they stood in very close proximity to Plaintiff – the female officer was behind him to his left; the other male officer was behind him to his right and Officer McCarthy was directly behind his back. (*SOF*, at ¶ 41). While Plaintiff was against the cruiser, all of the officers were against Plaintiff's body and Plaintiff was unable to tell whether the officers used their hands, shoulders or chest to hold him against the cruiser. (*SOF*, at ¶ 42).

Eventually, the officers were able to place handcuffs on Plaintiff while he was against the cruiser. (*SOF*, at ¶ 43). However, Plaintiff does not know if Officer McCarthy placed him in handcuffs. Id. It is at this point that Plaintiff alleges that the collar of his jersey was grabbed and his head was slammed onto the cruiser. (*SOF*, at ¶ 44). However, Plaintiff did not see Officer McCarthy's hands or the hands of the other two officers when, as Plaintiff alleges, the collar of his jersey was grabbed and his head and face was forced down onto the cruiser. (*SOF*, at ¶ 45). Further calling Plaintiff's vision into question, when Plaintiff's chest was against the cruiser, he was looking over the roof of the cruiser toward an apartment building in front of him and slightly to the left – not behind him. (*SOF*, at ¶ 46). Notably, in Plaintiff's interview with the Internal Affairs Division of the Boston Police Department on September 29, 2007, Plaintiff stated, "I had

5

my chest up against the car, so I don't really know what was gong on behind me." (*SOF*, at ¶ 47).

Regardless, Officer McCarthy emphatically denies Plaintiff's allegations. Specifically, Officer McCarthy did not grab the collar of the Plaintiff's jersey or force or slam Plaintiff's head onto the cruiser. (*SOF*, at ¶ 48).

Plaintiff was ultimately charged with resisting arrest, disorderly conduct and assault and battery on a police officer. (*SOF*, at ¶ 49).

## PROCEDURAL BACKGROUND

On October 10, 2009, Plaintiff filed the instant suit against Officer McCarthy, the City of Boston ("City") and Boston Police Commissioner Edward Davis ("Commissioner Davis") (collectively "Defendants"). In his Complaint, Plaintiff asserts various claims against the Defendants arising out of the incident described above. Complaint at ¶¶ 9, 10 (hereinafter, "Compl. at ¶ __."). Plaintiff's sole allegation is that during the course of his arrest, Officer McCarthy grabbed Plaintiff's collar and slammed his head onto the police cruiser. Compl. at ¶¶ 10, 11. Arising out of this alleged misconduct, Plaintiff asserted the following claims against Officer McCarthy: Count 1- use of excessive force in violation of 42 U.S.C. § 1983; Count II – intentional infliction of emotional distress; Count III – assault and battery; and Count IV – violation of M.G.L. c. 12, §11(I), the Massachusetts Civil Rights Act ("MCRA").[1]

---

[1] Against the City, Plaintiff asserted Count V – failure to train and supervise in violation of 42 U.S.C. § 1983 and Count VI – negligence under M.G.L. c. 258. Against Commissioner Davis, Plaintiff asserted Count V – failure to train and supervise in violation of 42 U.S.C. § 1983 and Count VII – negligent supervision.

## **STANDARD OF REVIEW**

Pursuant to Fed. R. Civ. P. 56, summary judgment should be granted when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Material facts are those that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'" Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). "A fact is material only if it possesses the capacity to sway the outcome of the litigation under the applicable law." Id. (quotations, punctuation and citations omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact. See Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). If that burden is met, the burden shifts to the opposing party and it can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), *cert. denied,* 511 U.S. 1018 (1994). Accordingly, "the nonmoving party 'may not rest upon mere allegation or denials of his pleading,' " but must set forth specific facts showing that there is a genuine issue for trial. Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). The court must view the record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. See Vineberg, 548 F.3d at 56. "If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the

moving party is entitled to judgment as a matter of law, summary judgment is appropriate." Walsh v. Town of Lakeville, 431 F.Supp.2d 134, 143 (D.Mass. 2006).

## ARGUMENT

### I. Officer McCarthy Is Entitled To Summary Judgment Because There Is No Genuine Issue Of *The* Material Fact That Is Essential To All of Plaintiff's Claims.

None of Plaintiff's claims can survive summary judgment because all of Plaintiff's claims hinge upon Plaintiff's allegation, which is *the* material fact in this case, that Officer McCarthy grabbed the collar of his shirt and slammed his head onto the roof of the cruiser after being handcuffed. Compl. at ¶ 11. This singular allegation is the crux of Plaintiff's claims against Officer McCarthy for violations of § 1983, violations of the MCRA, use of excessive force, intentional infliction of emotional distress, and assault and battery. What is fatal to all of Plaintiff's claims is his admission at his deposition that he could not see the hands of any of the three officers present for the arrest, including the hands of Officer McCarthy, leading up to and at the point when his head was allegedly forced down onto the roof of the cruiser. (*SOF*, at ¶¶ 45-47).

Plaintiff will likely attempt to defeat the instant motion by pointing to his deposition testimony which when asked how he knows that "it was Officer McCarthy that slammed [his] head into (*sic*) the cruiser," he answered, "I could just *sort of see* and *remembered where he was behind me* and I just could see from the corner of my eye, you know, that he grabbed me from back there and bam on top of the roof" See Exhibit D, at page 84:8-14, attached to Officer McCarthy's separately filed Statement of Undisputed Facts. This testimony, if anything, simply demonstrates that Plaintiff is engaging in complete conjecture. Moreover, this testimony came before Plaintiff was pressed on the

location of the officers' hands and whether or not he could see the hands of the officer that he alleges grabbed the collar of his jersey and slammed his head onto the cruiser. Given the close proximity of the officers to the Plaintiff when he was turned away from them against the cruiser and Plaintiff's inability to see the hands of the officers during the alleged excessive force, Plaintiff is relying on nothing other than speculation to reach his conclusion that Officer McCarthy grabbed his collar and slammed his head onto the cruiser.

In addition to Plaintiff's complete lack of affirmative evidence, Officer McCarthy vehemently denies Plaintiff's unsupported, material allegation. Specifically, Officer McCarthy avers that he did not grab Plaintiff's collar, touch Plaintiff's head or forcefully push Plaintiff's head and face onto the roof of the cruiser at any point during the arrest. (*SOF*, at ¶ 48).

In order to sustain his § 1983 claim and his MCRA claim arising out of the uncontested arrest, Plaintiff must demonstrate that a specific individual defendant, in this case Officer McCarthy, intentionally grabbed his collar and slammed his head onto the cruiser. Plaintiff's MCRA claim tracks his § 1983 claim because it is coextensive to § 1983 and requires proof of an unlawful act. See Bell v. Mazza, 394 Mass. 176, 181 (1985). Additionally, Plaintiff's claims for excessive force, assault and battery and intentional infliction of emotional distress are all dependent upon proof that Officer McCarthy intentionally grabbed his collar and slammed his head onto the cruiser. See Matter of Spring, 8 Mass.App.Ct. 831, n. 5 (1979) (reversed on unrelated grounds) (citing Prosser, Torts, § 9, at 34 (4th Ed. 1971)); Sietins v. Joseph, 238 F.Supp.2d 366, 380 (D.Mass. 2003) (quoting Jesionowski v. Beck, 937 F.Supp. 95, 105 (D.Mass.1996));

Sietins, 238 F.Supp.2d at 372 (quoting Howcroft v. City of Peabody, 51 Mass.App.Ct. 573, 596 (2001)); Farrah ex re. Estate of Santana v. Gondella, 725 F.Supp.2d 238, 244 (D.Mass. 2010) (citing Cruz-Erazo v.Rivera-Montanez, 212 F.3d 617, 621 (1st Cir. 2000)).

"As a general rule under § 1983, each defendant is responsible for his or her own acts." Lucas v. City of Boston, 2009 WL 1844288, * 24 (D.Mass. 2009) (citing Rodriguez-Vasquez v. Cintron-Rodriguez, 160 F.Supp.2d 204, 210 (D.P.R. 2001); Rizzo v. Goode, 423 U.S. 362, 370 (1976)). In Lucas v. City of Boston, this Court denied defendants' similar summary judgment motion for reasons that are entirely distinguishable from this case. Id. at 24-25. The individual defendants in Lucas based their summary judgment motion on Mrs. Lucas' inability to identify which officer handcuffed her and Janet Bradley and Daiquan Lucas' inability to identify which officer(s) pointed guns at them. Id. In denying the defendants' summary judgment motion, this Court used a test set out in Goings v. Chickasaw, 2008 WL 686917 (N.D. Iowa 2008).

With no precedential case law to use as a guide, the Goings court articulated a two-pronged test after conducting a survey of various federal courts around the country: in order to survive summary judgment a plaintiff must offer evidence that "(1) a particular officer caused the injury or (2) a particular officer stood by and failed to stop preventable harm caused by the actions of other officers, where he knew or should have known that the other officers were using excessive force." Goings, 2008 WL 686917 at *7. In Goings, the plaintiff was unable to identify whether a particular defendant was the one officer out of the six officers present that kicked him. The court concluded that the

summary judgment record did not give rise to the inference that the individual defendant kicked the plaintiff or had the ability to prevent another officer from a one-time kick to the plaintiff. Id. Given the plaintiff's lack of evidence, the Goings court refused to allow the case to proceed to trial on speculation alone. Id.

In Lucas, this Court applied the facts set out in the summary judgment record to the Goings test. Lucas, 2009 WL 1844288 at * 24-25. The testimony in Lucas placed all three defendant officers at the scene, however, the testimony conflicted as to how many officers out of the three had their guns drawn on the plaintiffs at various times. Id. The testimony also included descriptions of the physical characteristics of the officers that pointed their gun at the plaintiffs. Id. This Court concluded the Goings test was satisfied and summary judgment should be denied because the testimony in the summary judgment record was enough to allow a reasonable jury to conclude that either all three officers engaged in excessive force or knowingly failed to stop the other officers from engaging in excessive force. Id.

Applying the undisputed facts in the summary judgment record of this case to the Goings test used in Lucas, it is clear that summary judgment should be granted in favor of Officer McCarthy. First, Plaintiff has failed to offer specific evidence that Officer McCarthy grabbed his collar and slammed his head against the cruiser. And second, Plaintiff has not claimed and has not offered any evidence that Officer McCarthy knowingly failed to stop another officer from engaging in excessive force. In contrast to Lucas where the plaintiffs allegedly observed the defendants as their guns were pointed toward the plaintiffs and testimony included physical descriptions of the officers, this Plaintiff had his back turned to the officers and did not see which of the officers, if any,

grabbed his collar and slammed his head onto the cruiser. Similar to the plaintiff in Goings, this Plaintiff is relying on utter speculation and expects his claims to proceed to trial on such evidence.

Further problematic for Plaintiff when considering Lucas and Goings, is the structuring of the defendants. In Lucas, the plaintiffs individually named all of the officers present at the scene and left the jury to sort out the details as to who did what to whom. Lucas, 2009 WL 1844288 at *1, 24-25. In Goings, the plaintiff only named one of the six officers present at the scene leaving the individually named defendant to bear the burden of having a jury speculating on the one-in-six chance that he engaged in excessive force.[2] Goings, 2008 WL 686917 at *7-8. Like Goings, this Plaintiff has only named one of the officers present. Should this matter go to trial on Plaintiff's purely speculative evidence, Officer McCarthy alone will face a one-in-three chance of being found liable in the event that a jury first finds that an officer grabbed Plaintiff's collar and slammed his head onto the cruiser.

Because Plaintiff is unable to conclude, without engaging in pure speculation, as to whether Officer McCarthy grabbed his collar and pushed his head onto the roof of the cruiser, he cannot ask a jury to also engage in such rampant speculation on such a material fact. Accordingly, no reasonable jury could find in Plaintiff's favor and summary judgment must be granted in favor of Officer McCarthy on all of Plaintiff's claims against him.

---

[2] There were two individually named defendants in Goings. Goings, 2008 WL 686917 at *7-8. One defendant was alleged to have engaged in excessive force. Id. The second defendant was named because he failed to supervise the scene, not because he was alleged to have been directly involved in the excessive force. Id.

## II. **Officer McCarthy Is Entitled To Summary Judgment On Plaintiff's Assault And Battery Claim Because the Arrest Was Lawful And Officer McCarthy Used Reasonable Force.**

Summary judgment must be granted in favor of Officer McCarthy on Plaintiff's claim Count III of the Complaint for assault and battery because the arrest was lawful and the undisputed facts demonstrate that Officer McCarthy used reasonable force in effectuating the arrest.

Without substantive evidence to demonstrate that Officer McCarthy used excessive force, no reasonable jury will find in Plaintiff's favor on his assault and battery claim. "Assault and battery is the intentional and unjustified use of force upon the person of another, however slight, or the intentional doing of a wanton or grossly negligent act causing personal injury to another." Sietins v. Joseph, 238 F.Supp.2d 366, 380 (D.Mass. 2003) (quoting Jesionowski v. Beck, 937 F.Supp. 95, 105 (D.Mass.1996)). Under Massachusetts law, police officers are permitted to use reasonable force to accomplish an arrest. Dean v. City of Worcester, 924 F.2d 364, 369 (1st Cir. 1991). Because Plaintiff does not contest the validity of his arrest and has offered no demonstrable proof to show that Officer McCarthy used anything other than reasonable force in trying to handcuff Plaintiff as he was circling around thwarting arrest, a reasonable jury cannot find in Plaintiff's favor and summary judgment must be granted for Officer McCarthy.

## III. **Officer McCarthy Is Entitled To Summary Judgment On Plaintiff's Intentional Infliction of Emotional Distress Because The Arrest Was Lawful And Reasonable Force Was Used.**

Summary judgment must be granted in favor of Officer McCarthy on Plaintiff's claim in Count IV of his Complaint for intentional infliction of emotional distress because the

arrest was lawful and the undisputed facts demonstrate that Officer McCarthy used reasonable force in effectuating the arrest.

A successful claim for intentional infliction of emotional distress requires a plaintiff to show "(1) that the defendant intended to cause, or should have known that his conduct would cause, emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the plaintiff suffered severe distress." Sietins, 238 F.Supp.2d at 372 (quoting Howcroft v. City of Peabody, 51 Mass.App.Ct. 573, 596 (2001)). "To be considered extreme and outrageous, the defendants' conduct must be beyond all bounds of decency and ... utterly intolerable in a civilized community. Liability cannot be founded upon mere insults, threats, or annoyances." Sena v. Commonwealth, 417 Mass. 250, 264 (1994) (internal citations and quotations omitted). In other words, extreme and outrageous conduct must be "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Lucas, 2009 WL 1844288 at *27 (quoting Flibotte v. Pa. Truck Lines, 131 F.3d 21, 27 (1st Cir. 1997) (additional quotation omitted)). In the event that police officers are "merely carr[ying] out their obligations as law enforcement officials[,] . . . their conduct 'as a matter of law cannot be deemed extreme and outrageous.'" Sietins, 238 F.Supp.2d at 372 (quoting Sena, 417 Mass. at 264).

Nothing in the summary judgment record indicates that Officer McCarthy's use of force during the arrest of Plaintiff was excessive. If anything, the undisputed evidence suggests that Officer McCarthy's actions were necessary and reasonable considering Plaintiff's violent flailing about to prevent arrest. Furthermore, the actions that Officer

McCarthy's took in response to Plaintiff's unpredictable, defiant behavior cannot be considered extreme and outrageous. As such, no reasonable jury could find for Plaintiff at trial and summary judgment must be granted in favor of Officer McCarthy.

### IV. Officer McCarthy Is Entitled To Summary Judgment on Plaintiff's § 1983 and MCRA Claims To The Extent That They Are Based On An Alleged Violation Of Eighth Amendment Rights Were Violated.

Summary judgment must be granted in favor of Officer McCarthy on Plaintiff's § 1983 and MCRA claims to the extent they are based on an alleged violation of equal protection because there are no facts in his Complaint or within the summary judgment record that suggest such a claim.

The Eighth Amendment of the Constitution prohibits states from inflicting "cruel and unusual punishment" of its prisoners. Wilson v. Seiter, 501 U.S. 294, 297 (1991). "The State, however, does not acquire the power to punish with which the Eighth Amendment is concerned until after a formal adjudication of guilt in accordance with due process of law is made. Thus, excessive force claims arising out of arrests are analyzed under the Fourth Amendment's protection against unreasonable seizures." Gonzalez-Mercado v. Municipality of Guaynabo, 206 F.Supp.2d 257, 260-261 (D.P.R. 2002) (citing Graham v. Connor, 490 U.S. 386, 394–395, (1989)). All of Plaintiff's allegations occur before the he was charged with disorderly conduct, resisting arrest and assault and battery of a police officer. Consequently, the Eighth Amendment does not create a remedy for the Plaintiff and Officer McCarthy is entitled to summary judgment.

V.  **Officer McCarthy Is Entitled To Summary Judgment on Plaintiff's § 1983 and MCRA Claims To The Extent That They Are Based On An Alleged Violation Of Equal Protection.**

Summary judgment must be granted in favor of Officer McCarthy on Plaintiff's § 1983 and MCRA claims to the extent they are based on an alleged violation of equal protection because he failed to set forth any facts in his Complaint or offer any facts in the summary judgment record to show that Officer McCarthy treated him any differently from others similarly situated. While Plaintiff does not set forth specific allegations for an equal protection claim in his Complaint, he does allege that Officer McCarthy denied him equal protection of the laws in the Factual Allegation section of the Complaint. See Compl. at ¶ 12.

An individual plaintiff may assert an equal protection claim if "the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). See Wojik v. Massachusetts State Lottery Com'n, 300 F.3d 92, 104 (1st Cir. 2002). Here, the Plaintiff's Complaint is devoid of any facts to indicate that he was treated differently from similarly situated individuals. More importantly, the summary judgment record offers absolutely no facts to demonstrate that Officer McCarthy treated Plaintiff differently from similarly situated individuals. As such, no reasonable jury could find for the Plaintiff and summary judgment must be granted in favor of Officer McCarthy.

### VI. Officer McCarthy Is Entitled To Summary Judgment on Plaintiff's § 1983 and MCRA Claims To The Extent That They Are Based On An Alleged Fifth Amendment Violation.

Summary judgment must be granted in favor of Officer McCarthy on Plaintiff's § 1983 and MCRA claims to the extent they are based on an alleged violation of the fifth amendment because he failed to set forth any facts in his Complaint or offer any facts in the summary judgment record to show such a remedy exists. In his Complaint, Plaintiff merely asserts that Officer McCarthy violated his rights protected under the Fifth Amendment but he does not specify what actions of Officer McCarthy actually violated that right.

The Fifth Amendment provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law . . ." U.S. Const. amend. V; see also Gerena v. Puerto Rico Legal Services, 697 F.2d 447, 449 (1st Cir. 1983). This constitutional amendment applies to actions of the federal government, not those of private individuals, or of state, local or municipal governments. Id. at 449; see also Martinez-Rivera v. Sanchez-Ramos, 498 F.3d 3, 8 (1st Cir. 2007) (affirming dismissal of plaintiffs' claims under the Fifth Amendment because police officers are state actors and not federal actors). Plaintiff does not allege in his Complaint that Officer McCarthy is a federal actor and there are no facts contained in the summary judgment record to indicate as much. Accordingly, Officer McCarthy is entitled to summary judgment on Plaintiff's § 1983 and MCRA claims brought pursuant to the Fifth Amendment.

### VII. Officer McCarthy Is Entitled To Summary Judgment Because Qualified Immunity Shields Him From Liability.

In determining whether qualified immunity applies in a given case, the Court must determine: "(1) whether a public official has violated a plaintiff's constitutionally

17

protected right; and (2) whether the particular right that the official has violated was clearly established at the time of the violation." Raiche v. Pietroski, 623 F.3d 30, 35 -36 (1st Cir. 2010) (citing Estrada v. Rhode Island, 594 F.3d 56, 62–63 (1st Cir. 2010)). "These two prongs of the analysis need not be considered in any particular order, and both prongs must be satisfied for a plaintiff to overcome a qualified immunity defense." Id. (citing Maldonado v. Fontanes, 568 F.3d 263, 269–70 (1st Cir. 2009)). In applying the second prong of the qualified immunity analysis, the Court considers two subsidiary issues: "(a) the clarity of the law in general at the time of the alleged violation; and (b) the clarity of the law as applied to the case—in other words, whether a reasonable person in the defendant's shoes 'would have understood that his conduct violated the Plaintiff['s] constitutional rights.'" Id. (quoting Maldonado, 568 F.3d at 269).

Officer McCarthy's conduct during the arrest of the Plaintiff was that of a reasonable officer presented with similar circumstances. "To be sure, incidental contact-say, a 'gratuitously violent shove'-may be within the realm of conduct protected by qualified immunity." Morelli v. Webster, 552 F.3d 12, 24 (1st Cir. 2009) (quoting Saucier v. Katz, 533 U.S. 194, 208 (2001)). The "qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Lowinger v. Broderick, 50 F.3d 61, 65 (1st Cir. 1995) (quoting Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992)).

## **CONCLUSION**

For the foregoing reasons, Defendant Timothy McCarthy respectfully requests that his Honorable Court grant summary judgment in his favor on all of Plaintiff Jonathan Green's claims against him because Plaintiff has failed to demonstrate a genuine dispute of material fact and no reasonable jury could find in Plaintiff's favor at trial.

**DEFENDANT TIMOTHY McCARTHY REQUESTS AN ORAL ARGUMENT ON THIS MOTION**

    Respectfully submitted,

    DEFENDANT, TIMOTHY McCARTHY

    By his attorneys:

    William F. Sinnott
    Corporation Counsel

    /s/ Michelle K. Hinkley
    Michelle K. Hinkley, BBO # 675609
    Lisa Skehill Maki, BBO # 675344
    Assistants Corporation Counsel
    City of Boston Law Department
    Room 615, City Hall
    Boston, MA 02201
    (617) 635-3238 (Hinkley)
    (617) 635-4022 (Maki)
    Michelle.Hinkley@cityofboston.gov
    Lisa.Maki@cityofboston.gov

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

I hereby certify that, pursuant to Local Rule 7.1 on May 21, 2012, counsel for the Defendants attempted to, but was unable to confer with Plaintiff's counsel in a good faith effort to resolve or narrow the issues raised herein.

 /s/ Michelle K. Hinkley
Michelle K. Hinkley

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

/s/  Michelle K. Hinkley
Michelle K. Hinkley