## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **JONATHAN GREEN**<br>        **Plaintiff,**<br><br>**v.**<br><br>**TIMOTHY McCARTHY, the CITY**<br>**OF BOSTON, the**<br>**COMMISSIONER OF THE**<br>**BOSTON POLICE DEPARTMENT**<br>**EDWARD DAVIS,**<br>        **Defendants.** | 1:09-11705-NG |

## DEFENDANT, TIMOTHY McCARTHY'S LOCAL RULE 56.1 STATEMENT OF FACTS AND SUPPORTING DOCUMENTATION[1]

Pursuant to L.R. 56.1, Defendant Timothy McCarthy ("Officer McCarthy") submits the following statement of undisputed material facts in support of his motion for summary judgment.[2] Officer McCarthy states that Plaintiff Jonathan Green, ("Plaintiff") cannot advance any evidence to support his claims for violation of his civil rights under 42 U.S.C. § 1983 and M.G.L. c. 12, § 11(I), the Massachusetts Civil Rights Act and common law intentional tort violations of intentional infliction of emotional distress and assault and battery.

---

[1] All of the supporting documents attached hereto are true and accurate copies.  See Affidavit of Counsel, attached hereto as Exhibit A.

[2] Officer McCarthy accepts that the facts contained herein are undisputed only for the limited purpose of summary judgment.

## Officer McCarthy's Training

1.  Officer McCarthy attended the Boston Police Academy from October 2005 to May 2006 and graduated in May 2006. See Timothy McCarthy's Affidavit, attached hereto as Exhibit B, at ¶ 11.

2.  At the Academy Officer McCarthy received training on various areas, including but not limited to, constitutional law, state and federal civil rights, criminal law, crisis intervention, conflict resolution, interpersonal relations, ethics, defensive tactics, use of force, written communications, and the Boston Police Department's Rules, Regulations and Special Orders. See Exhibit B, at ¶ 12.

3.  At the Academy, Officer McCarthy was instructed on the use of non lethal force and that all of his actions taken during the course of an arrest must be "reasonable." Officer McCarthy is also versed on Rules 303, 303A, and Rule 304 on the use of force. See Exhibit B, at ¶ 13.

4.  Throughout Officer McCarthy's career, he has received follow up and additional training through in-service trainings. See Exhibit B, at ¶ 14.

5.  Officer McCarthy has made approximately 300 arrests. He has never been disciplined for the use of force, nor has any citizen, before this incident, made a complaint to the Boston police department about his use force during the course of an arrest. See Exhibit B, at ¶ 15.

## Inside the 7-11 Store

6.  On May 7, 2007, Officer McCarthy and Plaintiff were both inside of the 7-11 store located at 252 West Newton Street in Boston. At the same time, a group of three teenage boys was also in the 7-11. See Complaint, attached hereto as Exhibit C, at ¶¶ 9, 10; August 16, 2011 Deposition of Plaintiff, attached hereto as Exhibit D, at page 35:4-6, page 36:16-17.

7.  An employee of the 7-11, Ms. Yafeng Pan, was concerned that the teenagers were shoplifting candy from the store. To keep a better eye on the teenagers, Ms. Pan walked over to the candy aisle and pretended to be stocking the shelves. See Deposition of Yafeng Pan, attached hereto as Exhibit E, at page 8:22-24, page 9:1-2, page 11:18-24, page 12:1-11, page 16:8-24, page 17:1-8.

8.  Ms. Pan and another employee of the 7-11, Mr. Chuang Pan, first noticed Plaintiff when he was reading a newspaper that he picked up from one of the shelves. See Exhibit E, at page 19:8-14; Deposition of Chuang Pan, attached hereto as Exhibit F, at page 6:4-7, page 10:2-9.

9.  Ms. Pan and Mr. Pan both found Plaintiff to be loud and disruptive from the very first moment they encountered him in the store. Ms. Pan heard Mr. Green yell, "Why are you looking at me? Is it because I am black?" Mr. Pan also heard Plaintiff shout, "Why are you looking at me?," "Fucking Chinese!" and "You Chinese opened the store here. Why don't you go back to China to open the store." See Exhibit E, at page 19:23-24, page 20:1-14, 23-24, page 21:1-8; Exhibit F, at page 11:2-7, 14-24, page 12:1-14.

10. Plaintiff's extremely disruptive yelling and explosive behavior frightened Ms. Pan and caused other customers in the store to begin to stare. See Exhibit E, at page 20:6-14, page 22:17-20.

11. According to Plaintiff, he was simply watching the teenagers as they went about the store and he took issue when he saw one of the employees monitoring and following the boys around the store. See Exhibit D, at page 35:4-6.

12. Plaintiff claims that when the teenagers eventually approached the counter to purchase items, he asked the teenagers why they wanted to purchase items from a store where employees follow patrons around the store. See Exhibit D, at page 35:6-11.

13. Officer McCarthy, who was standing near the Plaintiff, saw that Plaintiff was creating a scene in the store and yelling at Ms. Pan and Mr. Pan about following the teenagers around the store. See Boston Police Incident Report, attached hereto as Exhibit G.

14. In an attempt to reduce rising tensions, Officer McCarthy calmly asked Plaintiff to lower his voice and to pay for his items. Plaintiff responded to Officer McCarthy that his conversation was none of Officer McCarthy's business. See Exhibit D, at page 35:12-17, page 37:16-21; Exhibit E, at page 22:12-16, page 29:15-19; Exhibit G.

15. The escalating situation with Plaintiff caused Officer McCarthy to open his red sox jersey that he was wearing over his uniform and identify himself as a police officer. See Exhibit D, at page 40:5-6, page 41:15-21; Exhibit G.

16. Officer McCarthy then asked Plaintiff whether he intended on buying any items at the store and, if not, then he should leave. See Exhibit D, at page 42:4-16; Exhibit F, at page 13:8-10; Exhibit E, at page 29:1-4, 20-24; Exhibit G.

17. While Plaintiff claims that he responded to Officer McCarthy's command by saying that he had no problem leaving the store, Officer McCarthy observed him reluctantly leave the store and continue to yell as he walked out. See Exhibit D, at page 42:7-14, page 43:12-24, page 44:1-4, Exhibit F, at page 20:23-23, page 21:1-15; Exhibit G.

Outside the 7-11 Store

18. When Plaintiff came out of the store, he stepped onto the street, just off of the side-walk in front of the store, to make a call from his cell phone to "check" his voicemail. See Exhibit D, at page 44:21-24, page 45:15-21, page 52:12-15; Exhibit G.

19. In Plaintiff's first deposition, he claimed that he called his landline at home to check his messages. See Exhibit D, at page 52:12-24, page 53:1-15.

20. Then at Plaintiff's second deposition he said that he was checking the voicemail on his cell phone. See April 19, 2012 Deposition of Plaintiff, attached hereto as Exhibit H, at page 73:4-10, page 74:6-24.

21. Interestingly, Defendants' records show that Plaintiff didn't make a phone call from his cell phone at all at the time of the encounter with Officer McCarthy. See Plaintiff's Sprint Cell Phone Record for May 7, 2007, attached hereto as Exhibit I.

22. While Plaintiff remained outside of the store "checking his messages", Officer McCarthy exited the store. Plaintiff felt it was necessary to initiate further communication with Officer McCarthy and asked Officer McCarthy for his name and badge number. See Exhibit D, at page 45:1-5, page 55:5-6; Exhibit G.

23. Officer McCarthy obliged and gave Plaintiff his information. See Exhibit D, at page 45:4-5, page 55:8-12; Exhibit G.

24. Admittedly, Plaintiff wanted Officer McCarthy's information because he was disgruntled after what transpired in the store and considered the possibility of filing a complaint against Officer McCarthy. See Exhibit D, at page 56:15-23.

25. After he obtained Officer McCarthy's information, Plaintiff stepped onto the sidewalk and bent down toward the ground to organize his personal belongings, which included his cell phone, keys and a glass drink bottle. See Exhibit D, at page 56:10-14.

26. Officer McCarthy took several steps toward him, without raising his voice, asked Plaintiff to walk away from the area. See Exhibit D, at page 58:15-23, page 60:21-23.

27. In response to Officer McCarthy's command, Plaintiff assumed a defensive position. See Exhibit D, at page 58:23-24, page 61:15-20.

28. Plaintiff explained to Officer McCarthy that he lived down the street on St. Botolph Street. See Exhibit D, at page 62:1-6.

29. Plaintiff then turned to cross the street when Officer McCarthy grabbed Plaintiff's shirt near his right, lower back. See Exhibit D, at page 62:7-10, 24, page 63:1-13.

30. Plaintiff continued to attempt to walk away from Officer McCarthy when Officer McCarthy grabbed Plaintiff's right arm near his wrist. See Exhibit D, at page 64:1-3, page 65:8-10.

31. Officer McCarthy then told Plaintiff that he did not give Plaintiff permission to leave and asked Plaintiff to provide identification. See Exhibit D, at page 65:15-18.

32. At this point, the exchange between Plaintiff and Officer McCarthy attracted the attention of people in the area who were watching the events unfold. See Exhibit D, at page 66:20-24, page 67:1-11.

33. Plaintiff refused to provide a form of identification to Officer McCarthy who then said he was placing Plaintiff under arrest. See Exhibit D, at page 67:15-19.

34. Officer McCarthy was unable to bring Plaintiff's arm behind his back to place handcuffs on him because Plaintiff started turning in circles to prevent Officer McCarthy from completing the arrest. See Exhibit D, at page 68:20-22, page 69:18-24, page 70:1-23.

35. Making the situation more dangerous, Plaintiff's circling pulled Officer McCarthy out into the street and into oncoming traffic. See Exhibit D, at page 71:6-18.

36. A Boston police cruiser ("cruiser") approached as Officer McCarthy continued to struggle with Plaintiff to control his arms and place him in handcuffs. See Exhibit D, at page 72:5-13.

37. The cruiser pulled over and a male and female officer exited the vehicle. See Exhibit D, at page 75:2-6, page 76:2-4.

38. The two arriving officers immediately assisted Officer McCarthy in the struggle with Plaintiff. See Exhibit D, at page 74:6-9; Exhibit E, at page 32:22-24, page 33:1.

39. Plaintiff was so difficult to control that it took all three officers to move the Plaintiff toward the cruiser where he was placed against the vehicle with his chest against the driver's side, back-door. See Exhibit D, at page 74:6-13, page 77:5-10, page 78:19-24, page 79:1-6; Exhibit E, at page 32:22-24, page 33:1-3.

40. Even with Plaintiff against the cruiser, the officers continued to struggle with the Plaintiff to get his arms behind his back. See Exhibit D, at page 74:6-13, page 77:5-10, page 78:19-24, page 79:1-6.

41. As the officers held the Plaintiff against the cruiser, they stood in very close proximity to Plaintiff – the female officer was behind him to his left; the other male officer was behind him to his right and Officer McCarthy was directly behind his back. See Exhibit D, at page 80:1-6, 17-24, page 81:6-16.

42. While Plaintiff was against the cruiser, all of the officers were against Plaintiff's body and Plaintiff was unable to tell whether the officers used their hands, shoulders or chest to hold him against the cruiser. See Exhibit D, at page 77:21-24, page 78:1-3, page 80:7-13.

43. Eventually, the officers were able to place handcuffs on Plaintiff while he was against the cruiser. However, Plaintiff does not know if Officer McCarthy placed him in handcuffs. See Exhibit D, at page 81:23-24, page 82:1-2, 20-24.

44. After being handcuffed, Plaintiff alleges that the collar of his jersey was grabbed and his head was slammed onto the cruiser. See Exhibit D, at page 74:14-17, page 83:16-20.

45. However, Plaintiff did not see Officer McCarthy's hands or the hands of the other two officers when, as Plaintiff alleges, the collar of his jersey was grabbed and his head and face was forced down onto the cruiser. See Exhibit D, at page 86:22-24; Exhibit H, at page 81:2-7, 22-24, page 82:1-8.

46. When Plaintiff's chest was against the cruiser, he was looking over the roof of the cruiser toward an apartment building in front of him and slightly to the left – not behind him. See Exhibit D, at page 86:20-21; Exhibit H, at page 81:8-21.

47. In Plaintiff's interview with the Internal Affairs Division of the Boston Police Department on September 29, 2007, Plaintiff stated, "I had my chest up against the car, so I don't really know what was gong on behind me." See Transcript of Plaintiff's September 29, 2007 Interview with the Internal Affairs Division of the Boston Police Department, attached hereto as Exhibit J, at page 24:21-24, page 25:1-6.

48. Officer McCarthy emphatically denies Plaintiff's allegations. Specifically, Officer McCarthy did not grab the collar of the Plaintiff's jersey or force or slam Plaintiff's head onto the cruiser. See Exhibit B, at ¶¶ 6-8;  Exhibit E, at page 33:19-24, page 34:1-21, page 36:23-24, page 37:1-16.

49. Plaintiff was ultimately charged with resisting arrest, disorderly conduct and assault and battery on a police officer. See Exhibit G.

Respectfully submitted,

DEFENDANT, TIMOTHY McCARTHY

By his attorneys:

William F. Sinnott
Corporation Counsel

/s/ Michelle K. Hinkley
Michelle K. Hinkley, BBO # 675609
Lisa Skehill Maki, BBO # 675344
Assistants Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-3238 (Hinkley)
(617) 635-4022 (Maki)
Michelle.Hinkley@cityofboston.gov
Lisa.Maki@cityofboston.gov

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

I hereby certify that, pursuant to Local Rule 7.1 on May 21, 2012, counsel for the Defendants attempted to, but was unable to confer with Plaintiff's counsel in a good faith effort to resolve or narrow the issues raised herein.

/s/ Michelle K. Hinkley
Michelle K. Hinkley

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.


/s/  Michelle K. Hinkley
Michelle K. Hinkley