UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

USDC NO. 1:09-11705-NG

JONATHAN GREEN
    Plaintiff,

v.

TIMOTHY McCARTHY, the CITY OF BOSTON, the COMMISSIONER OF THE BOSTON POLICE DEPARTMENT EDWARD DAVIS,
    Defendants.

**DEFENDANT, CITY OF BOSTON AND POLICE COMMISSIONER EDWARD DAVIS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

Plaintiff brings claims against the City of Boston and Police Commissioner Edward Davis (collectively "City Defendants") pursuant to 42 U.S.C. § 1983 and Mass. General Laws, Chapter 258 stemming from the alleged use of excessive force by police officer Timothy McCarthy ("Officer McCarthy") during his arrest on May 7, 2007.  Plaintiff alleges in his Complaint that the City Defendants (1) failed to train and supervise Officer McCarthy in violation of 42 U.S.C. § 1983, Count V; (2) negligently hired, trained, and supervised Officer McCarthy, Count VI; and (3) failed to adopt adequate procedures and failed to supervise Boston police officers adequately, Count VII.  The City Defendants now move pursuant to Fed. R. Civ. P. 56 for this Court to enter summary judgment in their favor as the Plaintiff has absolutely no evidence to support such claims and no genuine issue of material fact exists.

## STATEMENT OF FACTS

In support of their motion, the City and Commissioner Davis hereby incorporate by reference and rely upon *Defendant City of Boston's Local Rule 56.1 Statement of Facts and Supporting Documentation in Support of its Motion for Summary Judgment* ("*SOF*"), and *Officer Timothy McCarthy's Statement of Undisputed Facts in Support of His Motion for Summary Judgment* ("*Defendant Officers' Facts*"), and submit the following arguments.

## STANDARD OF LAW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment must make a preliminary showing that no genuine issue of material fact exists. *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995), cert. denied, 515 U.S. 1103 (1995). Once the movant has made such a showing, the non-movant must point to specific facts demonstrating that there is, indeed, a trial worthy issue. Id.

A fact is "material" if it has the "potential to affect the outcome of the suit under the applicable law," *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000), and a "genuine" issue is one supported by such evidence that "a reasonable jury, drawing favorable inferences, could resolve it in favor of the nonmoving party." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (quoting *Smith v. F.W. Morse & Co.*, 76 F.3d 413, 428 (1st Cir. 1996)). "Conclusory allegations, improbable inferences, and unsupported speculation," are insufficient to establish a genuine dispute of fact. *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

# ARGUMENT

**A. Plaintiff's Claim Against Boston Police Commissioner Edward Davis In His Official Capacity Is The Equivalent Of A Suit Against The City And Must Be Dismissed As A Matter Of Law.**

Plaintiff brings claims against Commissioner Davis as a defendant in his official capacity. All counts against Commissioner Davis in his official capacity, however, must be dismissed because naming a government official in his official capacity is the equivalent of naming the governmental entity itself. *Brandon v Holt,* 469 U.S. 464, 471-472 (1985); *see also Howcroft v. City of Peabody,* 51 Mass. App. Ct. 573, 596 (2001) (treating an "official capacity" intentional tort claim as a claim against the municipality). Because the City is already a defendant in this case, Commissioner Davis, in his official capacity, should be dismissed.

**B. Municipal Liability under 42 U.S.C. § 1983 Standard**

In order to prove his 42 U.S.C. § 1983 claim against the City, Plaintiff must show that: (1) Officer McCarthy was acting under color of law; (2) that Officer McCarthy violated Plaintiff's fourth amendment rights under the United States Constitution; (3) the City had an unconstitutional policy, custom or practice of failing to train or supervise Officer McCarthy; (4) this custom, policy, and practice was such that it demonstrated a deliberate indifference to the rights of those citizens with whom Officer McCarthy came in contact with. *See Monell v. Department Social Services*, 436 U.S. 658, 690 (1978); *Young v. City of Providence,* 404 F.3d 4, 25-26 (1st Cir. 2005).

**1. The Undisputed Facts Demonstrate That The Plaintiff Cannot Prove That Officer McCarthy Violated Plaintiff's Fourth Amendment Rights, Therefore, There Can Be No *Monell* Liability For The City of Boston.**

As more thoroughly set forth in the memorandum of law in support of Officer McCarthy's summary judgment motion, the Plaintiff is unable to show that he suffered the

deprivation of a constitutional right as he cannot identify the person who allegedly slammed his head off of a police cruiser. The undisputed facts are as follows: after the Plaintiff was arrested, he was standing against a police cruiser surrounded by three police officers. *See Officer McCarthy's* SOF, ¶ 42-44. Officer McCarthy was behind him, while the other two officers were on either side of him. *Id*. Someone then grabbed Plaintiff's jersey from behind and slammed his head forward against the roof of the cruiser. *Id. at* ¶ 45. Plaintiff, however, was looking ahead, and was unable to see behind him or see any of the officers' hands prior to being grabbed by the jersey. *Id*. at ¶ 47. Based on the above, Plaintiff has absolutely no evidence, aside from rank speculation, that it was Officer McCarthy that grabbed his jersey from behind and slammed his head off the police cruiser. Without any evidence to support his allegations, the Plaintiff has no reasonable likelihood of proving that Officer McCarthy used excessive force against him in violation of his fourth amendment rights.

It is well-settled law that, in order to establish municipal liability under § 1983, there must be a finding of two preliminary elements: "first, that plaintiff's harm was caused by a constitutional violation, and second, that the City be responsible for that violation, an element which has its own components." *Young,* 404 F.3d at 25-26. Municipal liability exists only where there is an underlying identifiable constitutional violation that is attributable to official municipal policy. *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986). Thus, the municipality's failure to train or supervise its police officers only becomes a basis for liability when "action pursuant to official municipal policy of some nature *caused a constitutional tort.*" *Monell,* 436 U.S. at 691 (emphasis added); *see also Heller,* 475 U.S. at 799 ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations

4

might have *authorized* the use of constitutionally excessive force is quite beside the point."); *Wilson v. Town of Mendon,* 294 F.3d 1, 6-7 (1st Cir.2002).

As Plaintiff is without any evidence to show that it was Officer McCarthy who grabbed his jersey and slammed his head forward against the cruiser, he is unable to demonstrate that Officer McCarthy violated his constitutional rights. Plaintiff is thus unable to prove a necessary element to municipal liability. For this reason, the City Defendants are entitled to judgment as a matter of law.

> **2. Even If The Plaintiff Had Any Evidence To Demonstrate A Constitutional Violation, Count V Must Still Be Dismissed Because There Is No Evidence That The City Inadequately Trained Or Supervised Officer McCarthy, Or That It Was Indifferent To The Constitutional Rights Of Its Citizens.**

A city or supervisor can only be held liable under § 1983 for their own unconstitutional actions. *Monell v. Department of Soc. Services of New York*, 436 U.S. 658, 694-695 (1978) (no respondeat superior or vicarious liability). Municipalities may be subject to suit only when "the execution of [the municipal] government's policy . . . inflicts the injury." *Whitfield v. Melendez-Rivera*, 431 F.3d 1, 9 (1st Cir. 2005) citing *Monell*, 436 U.S. at 694; *see also City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (liability only when there is a "direct causal link" between an official policy and the constitutional violation). "A city's policy of inadequately training its police force can serve as a basis for § 1983 liability if the city's failure to train 'amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" *Whitfield*, 431 F.3d at 9-10, *citing Canton*, 498 U.S. at 388.

It is the plaintiff's burden to prove the direct causal link between the "policy," or the supervisory conduct, to his/her injury. *See Board of County Commissioners of Byran County, Oklahoma v. Brown*, 520 U.S. 397, 403 (1997) (citations omitted). Similarly, supervisory liability attaches when there is direct participation in the unconstitutional conduct or through

5

indirect conduct that amounts to authorization to commit the unconstitutional conduct. *Camilo-Robles v. Zapata*, 175 F.3d 41, 44 (1st Cir. 1999).   Moreover, expert testimony is necessary to establish that the training program or supervisory conduct is substandard. *See* Fed. R. Evid. 702; *see also Santiago v. Fenton*, 891 F.2d 373, 382 (1st Cir. 1989), *citing Bordanaro v. McLeod*, 871 F.2d 1151, 1160 (1st Cir. 1989) (plaintiff must present evidence that training was substandard to that of the profession); *Parker v. City of South Portland*, 2007 WL 1468658, *27 (D. Mass. 2007) (Cohen, M.J.) (expert testimony used to bring claim as to the appropriateness of the use of Taser); *Beal v. Blanche*, 2005 WL 352861, *6 (D. Mass. 2005) (Stearns, J.) (expert used to establish element of deliberate indifference in supervisory claim).

In this case, the Plaintiff's claims against the City Defendants fail, and must be dismissed, because the Plaintiff has no evidence to show that Officer McCarthy committed an unconstitutional act.  *See Wilson v. Town of Mendon*, 294 F.3d 1, 6-7 (1st Cir. 2002) citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam) (no municipal or supervisory liability when no constitutional harm inflicted). Dismissal is also appropriate because the record lacks any evidence showing the City inadequately trained or supervised Officer McCarthy. Specifically, the Plaintiff failed to submit any expert testimony which would establish a deficiency in the City's training or supervision. *See City and Commissioner Davis' Statement of Facts,* at ¶ 7 (hereinafter "*COB SOF*"*,* at ¶ _.").  In addition, dismissal is warranted because Plaintiff failed to show there was an unconstitutional policy, or supervisory action, which was the direct cause of his injuries.

### 3. The Undisputed Evidence Shows The City Properly Trained Officer McCarthy And That It Was Not Indifferent To The Rights Of Its Citizens.

"[T]here are limited circumstances in which an allegation of 'failure to train' can be the basis for liability under § 1983." *Canton*, 498 U.S. at 387. Plaintiffs have to surpass a very high

standard to bring a successful failure to train claim. *See Young v. City of Providence*, 404 F.3d 4, 26 (1st Cir. 2005); *see also Santiago v. Fenton*, 891 F.2d 373, 381 (1st Cir. 1989) (referring to high standard set by Supreme Court). Liability attaches only when there is a showing that the failure to train amounts to deliberate indifference to the rights of the citizens, and the specific deficiency in the training is the "moving force" behind the constitutional injury. *Id*. at 388-389 ("Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."). *See also Wilson v. Town of Mendon*, 294 F.3d 1, 6 (1st Cir. 2002) (citing *City of Canton*, 489 U.S. at 385).

To establish a claim for inadequate training there must be more than mere evidence of officer error. *Id.* at 391 ("[A]dequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable."). The Court has also noted there is no liability when an officer is trained unsatisfactorily because it could be due to the shortcomings of the officer not the training *per se*. *Id*. at 390-391. Nor is there liability when there is proof that an injury could have been avoided if the officer had better or more training. *Id*. at 391. Just because training is imperfect or not implemented in the preferred form, does not mean there is liability. *Young*, 404 F.3d at 27.

In this case, it is undisputed that Officer McCarthy attended and graduated from the Boston Police Academy. *COB SOF*, ¶ 1. At the Academy Officer McCarthy received training on various areas, including but not limited to, constitutional law, state and federal civil rights, criminal law, crisis intervention, conflict resolution, interpersonal relations, ethics, defensive tactics, use of force, written communications, and the Boston Police Department's Rules, Regulations and Special Orders. *Id.*, at ¶ 2.  At the Academy, Officer McCarthy was instructed

on the use of non lethal force and that all of his actions taken during the course of an arrest must be "reasonable." *Id.*, at ¶ 3. Additionally, throughout his career, Officer McCarthy received additional in-service training on the use force. *Id.*, at ¶ 4. Moreover, the Rules, Regulations and Special Orders of the Boston Police Department provide guidance to officers on how the use of force. *Id.*, at ¶ 6. Of specific relevance to this case, are Rules 303, 303A and Rule 304 which govern the use of nonlethal force. *Id.*, at ¶ 4.

The undisputed evidence shows the training and guidance received by Officer McCarthy was adequate. The Plaintiff cannot produce any evidence to show inadequacies in the Academy's training or the Boston Police Department's in-service trainings or Rules, Regulations and Special Orders. Nor can he produce any evidence to show if and how the training was inferior to the standards of the profession. *See Santiago*, 891 F.2d at 382, citing *Bordanaro v. McLeod*, 871 F.2d 1151, 1160 (1st Cir. 1989). Rather, what the evidence shows is that Officer McCarthy was appropriately trained in concepts such as constitutional law, reasonableness, use of force at the Academy and during in-service trainings, and the Department's Rules and Regulations. *Santiago*, 891 F.2d at 382 (no evidence of substandard training or inadequate posting of changes of law, and failure to provide policy manual to police officers is insufficient to establish failure to train claim). Quite simply, the evidence does not show a pattern that would lead any reasonable jury to conclude that there was a failure to train or inadequate training.

Even assuming, *arguendo*, the Court finds the training lacking, the Plaintiff's claim fails because there is no evidence showing the City was deliberately indifferent to the constitutional rights of its citizens. *See Whitfield,* 431 F.3d at 12-13, citing *DiRico v. City of Quincy*, 404 F.3d 464, 469 (1st Cir. 2005); *Santiago v. Fenton*, 891 F.2d 373, 382 (1st Cir. 1989) ("holding that evidence that police officers only received four hours of training with regard to constitutional

issues did not establish 'a "conscious" policy to train inadequately.'").  Specifically, there is no evidence that the City knew of a deficiency in the training, deliberately ignored it and chose not to correct it.  Nor is there any evidence that a lack of training was the direct cause of the Plaintiff's alleged constitutional injuries.

"[A] single instance of police misconduct in the field, standing alone, is insufficient to establish the endorsement of an informal policy or custom by the City. *See Maldonado v. Fontanes,* 568 F.3d 263, 273–275 (1st Cir. 2009) (single act of repetition found insufficient to establish custom or policy); *Bordanaro v. McLeod,* 871 F.2d 1151, 1156 (1st Cir.1989) (to impose liability on municipality a practice "must be so well settled and widespread that . . . municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice"); *accord Estate of Bennett v. Wainwright,* 548 F.3d 155, 177 (1st Cir. 2008).

Given that the Plaintiff is without any evidence to show that the City's training was lacking, or that even if the City's training was lacking, it was deliberately indifferent to the rights of its citizens, the City Defendants are entitled to judgment as a matter of law.

> **4. Count V Must Be Dismissed Because It Fails To Allege Facts To Establish A Supervisory Liability Claim, And Because The Record Does Not Support The Claim.**

To the extent Count V raises a claim for supervisory liability, it must be dismissed because the Plaintiff has failed to identify, or submit evidence of, the supervisor whose actions caused the alleged constitutional injury.  In the context of § 1983 actions, supervisor liability attaches where a supervisor is a "primary violator or direct participant in the rights-violating incident" or "if a responsible official supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may

9

contribute to a civil rights deprivation." *Sanchez v. Pereira-Castillo,* 590 F.3d 31, 49 (1st Cir.2009) (quoting *Camilo-Robles v. Zapata,* 175 F.3d 41, 44 (1st Cir.1999)).

Supervisors can only be liable for their own acts and omissions. *Whitfield*, 431 F.3d at 14, citing *Barreto-Rivera v. Medina-Vargas,* 168 F.3d 42, 48 (1st Cir. 1999). Liability can be imputed based "on either the supervisor's direct participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization." *Id.* (citation omitted). In cases of indirect participation, the plaintiff must prove there was a constitutional violation caused by the supervisor's subordinates and that the supervisor's actions were "affirmatively linked" to the subordinates' actions. *Id.* (citations omitted).

An affirmative link is shown when there is evidence that the supervisor's behavior "could be characterized as supervisory encouragement, condonation or acquiescence' or gross negligence . . . amounting to deliberate indifference." *Id.* (citations and quotations omitted). "Deliberate indifference will be found only if 'it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights.'" *Hegarty v. Somerset County,* 53 F.3d 1367, 1380 (1st Cir. 1995) (citations omitted).

Here, the Plaintiff failed to articulate or submit any facts that identify the supervisor who is responsible and what acts or omissions make him/her liable under this theory of law. Therefore, this claim fails as a matter of course. Assuming, *arguendo*, that Plaintiff alleges that Boston Police Commissioner Edward Davis is the person responsible, the claim nonetheless fails. As reasoned by the Court in *Whitfield*, because Plaintiffs failed to provide sufficient evidence to establish that the Defendant Officers were inadequately trained, it followed they failed to show a claim for supervisory liability. *See Whitfield*, 431 F.3d at 14. In particular, there is no evidence showing Officer McCarthy's supervisor was "deliberately, recklessly or

callously indifferent to the constitutional rights of the citizens." *Id.* Undisputedly, if there is no proof of any training deficiencies, there is no proof of a supervisor's knowledge of deficiencies in the training. *Id.* Accordingly, to the extent Count V raises a claim of supervisory liability, it must be dismissed.

    **C.**    **Plaintiff's Negligent Hiring, Training, And Supervising Claims Fail As A Matter Of Law.**

Finally, Counts VI and VII must be dismissed because, as stated *supra,* the Plaintiff has absolutely no evidence to support his claim that the City's training was deficient in any way or that anyone failed to properly supervise Officer McCarthy. Moreover, the City is immune from suit pursuant to M.G.L. c. 258, §§ 10(j) and 10(b). Under M.G.L. c. 258, § 10 (j), the City is immune from liability, "from all harmful consequences arising from its failure to act to prevent [or diminish the harmful consequences of a condition or situation], including the violent or tortious conduct of a third person, unless it 'originally caused' the 'condition or situation' that resulted in the harmful consequence." *Kent v. Commonwealth,* 437 Mass. 312, 317 (2002).

"'Original cause' means an affirmative act (not a failure to act) by a public employer that creates the condition or situation that results in the harm inflicted by a third party." *Id.* at 318. Immunity does not apply when the public employee's intervention causes injury to the plaintiff or places the plaintiff in a worse position than he would have been in before the intervention. M.G.L. c. 258 § 10 (j)(2). In the context of these particular claims of failure to train or supervise, these are claims arising out of a failure to prevent or diminish a harm and are not affirmative acts and thus are barred by § 10(j)." *Armstrong v. Lamy*, 938 F. Supp. at 1044; *Doe v. Old Rochester Regional District*, 56 F. Supp.2d 114, 121 (D. Mass. 1999) (internal citations omitted); *Bonnie W. v. Commonwealth*, 419 Mass. 122, 126-27 (1994) (Commonwealth immune from suit based on parole officer's failure to supervise parolee who assaulted the plaintiff).

Furthermore, the City is immune from liability for a claim of negligent hiring, supervising and training based on M.G.L. c. 258, § 10(b).  Hiring, training and supervision, constitute discretionary functions, from which the City is immune from liability.  *See Parker v. Town of Swansea,* 270 F.Supp.2d 92, 101-02 (D.Mass.2003).  "The hiring, training, supervising, disciplining, and retaining police officers may all be policy determinations."  *Blanchard v. Swaine*, 2010 WL 4922699, * 14 (D.Mass., 2010).  "City policymakers must make conscious decisions about the rules and standards governing these different aspects of the administration of a police department, and it is not the role of the Court to second-guess these decisions."  *Id*.  Here, the Plaintiff does not have *any* evidence that the City failed to implement policies on hiring, training, and supervising or failed to follow its policies on hiring, training, and supervising.  *Cf. Blanchard*, 2010 WL 4922699, * 15.  Rather, he has set forth only naked assertions that Officer McCarthy was negligently hired, trained, and supervised.  That is insufficient as a matter of law, and the City Defendants are therefore entitled to summary judgment in their favor.

## CONCLUSION

Wherefore, based on the foregoing, the Defendants, City of Boston and Police Commissioner Edward Davis, respectfully request that this Court grant summary judgment in their favor as to Counts V – VII.

| | |
|---|---|
| **CERTIFICATE OF SERVICE** | Respectfully submitted,<br>DEFENDANT, CITY OF BOSTON<br>William F. Sinnott,<br>Corporation Counsel |
| I hereby certify that on this day, a copy of this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants. | By its attorneys,<br><br>/s/ Lisa Skehill Maki<br>Lisa Skehill Maki, BBO # 675344<br>Michelle Hinkley BBO #<br>Assistant Corporation Counsel<br>City of Boston Law Department<br>One City Hall Plaza, Room 615<br>Boston, MA 02201<br>(617) 635-4022 (Maki)<br>(617) 635-3238 (Hinkley)<br>Lisa.Maki@cityofboston.gov<br>Michelle.Hinkley_@cityofboston.gov |
| May 21, 2012   /s/ Lisa Skehill Maki<br>Date            Lisa Skehill Maki | |

## 7.1 Certification

Undersigned counsel certifies that on May 21, 2012, pursuant to LR, D. Mass. 7.1(a)(2), counsel for the Defendant, City of Boston, Michelle Hinkley, attempted to confer with counsel for the Plaintiff and was unable to reach him in order to resolve or narrow the issues.

Date:   May 21, 2012                                        /s/ Lisa Skehill Maki
                                                            Lisa Skehill Maki